UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DAVID HEAD,

    Petitioner,

v.                              Case No. 3:20-cv-484-TJC-LLL

SECRETARY, FLORIDA DEPARTMENT OF
CORRECTIONS AND FLORIDA ATTORNEY
GENERAL,

    Respondents.

## ORDER

**I. STATUS**

Petitioner David Head, a prisoner in the custody of the Florida Department of Corrections, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Head challenges a judgment rendered by the Seventh Judicial Circuit in and for St. Johns County, Florida in State v. Head, No. CF01-492. (Id.) The Secretary of the Florida Department of Corrections ("Respondent") filed a response in opposition to the petition. (Doc. 10). Head declined to file a reply (Doc. 12), and the petition is ripe for review.

Because the Court was able to resolve both of Head's claims on the basis of the record, an evidentiary hearing is not warranted. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

## II.  GOVERNING LEGAL PRINCIPLES

### A.  The Antiterrorism Effective Death Penalty Act (AEDPA)

Under the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). In this context, clearly established federal law consists of the governing legal principles set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. White v. Woodall, 572 U.S. 415, 420 (2014); Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).

A decision is contrary to clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003). And a state court decision involves an unreasonable application of the Supreme Court's precedents if the state court correctly identifies the governing legal

2

principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000) (quoting Williams, 529 U.S. at 406).

The standard to obtain relief under 28 U.S.C. §2254(d) is both mandatory and difficult to meet. To demonstrate entitlement to federal habeas relief, the petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 572 U.S. at 420 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)). Moreover, when reviewing a claim under section 2254(d), a federal court must presume that any "determination of a factual issue made by a State court" is correct, and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e).

A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits—warranting deference. Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Generally, in the case of a silent affirmance, a federal habeas court will "look through" the unreasoned opinion and presume that the affirmance rests upon the specific reasons given by the

3

last court to provide a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991); Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). However, the presumption that the appellate court relied on the same reasoning as the lower court can be rebutted "by evidence of, for instance, an alternative ground that was argued [by the state] or that is clear in the record" showing an alternative likely basis for the silent affirmance. Sellers, 138 S. Ct. at 1196.

### B. Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687–88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id.

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Id. at 688. In reviewing counsel's performance, a court must presume that "counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689 (citation omitted). A court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a highly deferential level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to prejudice, "Strickland places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different" had Counsel performed as Head argues he should have. Wong v. Belmontes, 558 U.S. 15, 27 (2009) (quoting Strickland, 466 U.S. at 694). Proving Strickland prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 687.

## III. BACKGROUND AND PROCEDURAL HISTORY

On December 17, 2001, Head was charged by second amended information with two counts of sexual battery on a child between the ages of eight and nine years old. (Doc. 10-1 at 5). The first count alleged penile penetration of the victim's mouth and the second count alleged insertion of a dildo into the victim's vagina. (Id.) Head was convicted at trial, but Florida's Fifth District Court of Appeal ("Fifth DCA") reversed the conviction and remanded for a new trial. (Id. at 7–8).

After a second trial, Head was once again found guilty as charged on both counts. (Doc. 10-2 at 148–49). The trial court sentenced him to a mandatory term of life in prison. (Id. at 143–44). The Fifth DCA affirmed Head's convictions and sentence per curiam without a written opinion. (Id. at 215).

Thereafter, Head filed a motion and an amended motion for postconviction relief under Rule 3.850 of the Florida Rules of Criminal

Procedure (collectively, "Rule 3.850 Motion") that raised 16 claims of ineffective assistance of trial counsel. (Doc. 10-2 at 228–65, 276–82). The postconviction court summarily denied all or parts of ten claims and set the remaining claims for an evidentiary hearing. (Id. at 320–489). After the evidentiary hearing (id at 491–586) and supplemental briefing (id. at 588–610), the postconviction court denied the remaining claims. (Id. at 612–66). The Fifth District Court of Appeal affirmed without a written opinion. (Id. at 754).

Head signed this federal 28 U.S.C. § 2254 petition on May 7, 2020. (Doc. 1 at 15).[1]

## IV. DISCUSSION

Head alleges two grounds of ineffective assistance of trial counsel Jill Barger ("Counsel"). Both grounds were raised in Head's Rule 3.850 Motion, denied by the postconviction court with a reasoned opinion, and affirmed by the Second DCA without a written opinion. Therefore, the claims are exhausted, and unless noted otherwise, the Court will look through the Second DCA's unreasoned opinion on each claim and presume that the affirmance rested upon the reasons given by the postconviction court. Sellers, 138 S. Ct. at 1192.

---

[1] Under the "mailbox rule," a pleading is considered filed by an inmate on the date it was delivered to prison authorities for mailing, which—absent contrary evidence—is the date it was signed. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001).

6

### A. Ground One

Head asserts that Counsel was constitutionally ineffective for failing to object to the introduction of collateral crime/uncharged act evidence. (Doc. 1 at 5). He explains this ground as follows:

> In this case, Petitioner was charged with two counts of capital sexual battery. The two allegations only involved oral sex and vaginal penetration with an object. However, the prosecutor at trial introduced evidence that Petitioner had also committed a sexual battery upon the victim in alternative manners that were never charged by the State. Petitioner was clearly prejudiced where the evidence of the charged acts was weak, but the jury heard testimony of the uncharged acts that subsequently became a feature of the prosecution's case. As such, a reasonable probability exists that Petitioner was found guilty based solely on his propensity to offend rather than his perpetration of the crimes actually charged by Information. For instance, evidence was presented that Petitioner attempted to or actually anally penetrated the victim, that he digitally penetrated the victim's vagina, and that he attempted to penetrate her vagina with his penis. In addition, evidence was introduced that Petitioner showed pornographic material to the underage victim, smoked marijuana, and struck her with a stick, all of which would constitute violations of criminal statutes.

(Doc. 1 at 5–6). Head raised a similar claim in his Rule 3.850 Motion, and after holding an evidentiary hearing, the postconviction court denied the claim on both Strickland prongs as follows.

> Defendant alleges his counsel was ineffective for failing to object and move for a mistrial when collateral crime evidence was introduced. Defendant's post-conviction counsel asked Ms. Barger if Defendant was charged only with penile penetration of the victim's mouth and insertion of an object into victim's vagina. Ms. Barger agreed, but said it was "on diverse days" and happened repeatedly. Post-conviction counsel then addressed counsel's

7

alleged failure to object to the following alleged collateral crime evidence:

1. *Defendant showed pornographic material to victim*: Ms. Barger testified the basic tenor of the defense was that the victim had a very poor recollection of specific facts involving the actual sexual acts. Ms. Barger believed the victim had testified inconsistently regarding the pornographic material in another deposition. Accordingly, Ms. Barger intended to use that evidence as impeachment to discredit the victim. Ms. Barger also testified she did not necessarily feel it was collateral crime evidence and it did not rise to the level of a mistrial.

2. *Defendant attempted to or actually anally penetrated the victim*: Ms. Barger responded her strategy was not to handle the case based on the two counts charged, and was instead looking at the case as Defendant was charged with molesting the child every time the mother was gone. Post-conviction counsel asked Ms. Barger why she asked the victim questions about anal penetration. Ms. Barger explained she was attempting to bring in the CPT documents which showed no anal trauma and that she needed to have a unified set of facts that she was presenting to the jury about what had happened. Ms. Barger explained that anal penetration was alleged by the victim on the CPT document.

3. *Digitally penetrated the victim's vagina*: Ms. Barger again explained that "the defense was structured in a different way than attempting to limit it to two specific acts in count I and count II."

4. *Victim digitally penetrated her own vagina*: Ms. Barger did not recall this specifically, but testified she did not feel it rose to the level of a mistrial.

5. *Defendant attempted to penetrate her vagina with his penis*: Ms. Barger again responded that "the tenor of the case was that [Defendant] was attempting a series of different acts every time the mother left the house," and she was not "defending against two statements in count I and count II."

6. *Defendant smoked marijuana with Ms. Dickerson*: Ms. Barger responded that she did not think this was significant enough.

8

> 7. *Defendant struck the victim with a stick*: Ms. Barger responded that it was her theory of defense that this event was something the victim her strategy to contrast the victim's detailed memory regarding the stick incident, with her inability to remember details of the sex acts. Ms. Barger testified that she felt she needed to highlight this contrast to cast doubt on whether the sexual abuse actually happened to the victim. Ms. Barger testified that combined with the lack of medical evidence, she hoped this was enough to create reasonable doubt. The Court finds Ms. Barger made a strategic decision and Defendant cannot establish prejudice.
>
> Regarding the pornographic material, the Court finds that Ms. Barger's decision not to object was based on sound trial strategy. Ms. Barger testified that she intended to use the victim's testimony for impeachment purposes and the trial transcript reflects that she did so. Regarding anal penetration, as the Court discussed in ground seven, the fact that the victim claimed the Defendant anally penetrated her was used to highlight the lack of physical injury found during the exam. The fact that Defendant penetrated the child both vaginally and anally without injury was potentially beneficial to the defense as it could have served to discredit the victim. Defendant presented no evidence that he was prejudiced by the victim's additional claims that he vaginally and anally penetrated her or that this affected the victim's credibility.

(Doc. 10-2 at 625–28 (internal citations to the record omitted)). The Fifth DCA affirmed without a written opinion. (Doc. 10-2 at 754).

Head does not explain how the state courts' adjudication of this claim was unreasonable. And this Court's review of the record, including the trial and evidentiary hearing transcripts, supports the state courts' conclusion that Counsel made a strategic decision to sow doubt about the veracity and accuracy of the victim's allegations by pointing out that many of her claims were inconsistent with her prior testimony and with medical evidence. Counsel

9

explained at the evidentiary hearing that "the tenor of the case was that [Head] was attempting a series of different acts every time the mother left the house. And I was not defending against [only the] two statements in Count 1 and Count 2." (Doc. 10-2 at 519). Counsel testified that the victim remembered things (such as Head striking her with a stick) "in color" whereas she was not "able to even remember minor details or major details of alleged sex acts. And I felt that that was the contrast that we had to present to the jury to raise a reasonable doubt that these things actually happened to her, especially in conjunction with the lack of medical evidence." (Id. at 520). Counsel explained that there was "a young little child saying that this great big man had molested her on a daily basis for over a year and yet, there was not a shred of physical evidence; nor did she ever report it, so that was my theory." (Id. at 523).

Counsel presented this theory of defense at trial. During her opening statement, Counsel noted that the pediatric nurse practitioner who had examined the victim did "not find that the hymen had been transected or torn [and] [s]he did not find anal tearing, anal healing. She found nothing to support the allegations that [the victim] had made." (Doc. 10-1 at 216). Counsel also told the jury "to keep notes on how [the victim] remembers what this alleged abuse was. During our questioning of her, this year, there were huge portions of her original allegations she does not recall." (Id. at 217). But Counsel noted that the victim would tell the jury about two stories, and "[o]ne of them is about a stick.

10

I'll ask her to recall it for you. The other is about a day that she wanted to go to the beach, and [Head] got mad about it and got up—got up on their truck and started jumping on the truck and kicking the windshield. I'll ask you during your deliberations to contrast the detail and the precision of memory she has for those two events versus the issues that we're here about today." (Id.)

During Counsel's cross examination of nurse practitioner Michelle Muskus, who had examined the victim after her reports of abuse, Ms. Muskus agreed that she would have expected to find more damage to the victim if anal or vaginal penetration had occurred. (Doc. 10-2 at 15–16). Counsel also questioned the victim at length about inconsistencies in her prior testimony regarding the sexual activity that occurred. (Doc. 10-2 at 53–70). The victim admitted that she could not remember everything she had talked about or said during previous interviews regarding the alleged sex acts, but testified that she "vividly" remembered Head hitting her with a stick and jumping on a truck. (Id. at 66, 70–71).

At the close of the state's case, Counsel moved for a judgment of acquittal, arguing that the victim "has a very vague and inaccurate recollection, if at all, of the events that took place that she [has alleged] and is charging Mr. Head with." (Id. at 77). Counsel argued that "there's such contradiction in her testimony, there's such weakness in her belief, in her own words and her own recollection that I don't think that her testimony meets the standard of beyond

11

a reasonable doubt." (Id. at 79). During closing argument, Counsel pointed out that the victim's testimony on the instances of molestation was inconsistent with the medical evidence that showed only a small, healed notch on her hymen:

> How then, do you take a little, tiny ten-year-old girl whose report it is, I was sexually molested, penetrated, had dildos used on me, had a had a grown man's grown penis shoved in me for over a year and a half, have no signs of sexual abuse on her private parts?
>
> And you can't cherry pick and say, well, maybe this happened, but that didn't happen, maybe – maybe she just forgot this and forgot that. The testimony has to be taken as a whole. She's either telling the truth or she is not.
>
> . . .
>
> The only direct testimony that you have from [the victim] is her testimony here today compared with her testimony that she gave in March. Today it was full of drama and horrible abuse. In March she didn't really recall much of anything. No direct testimony of anal penetration. No direct testimony of oral penetration. No direct testimony of vaginal penetration.
>
> . . .
>
> I think the State said, you're not going to like Mr. Head by the end of this trial. I don't know what evidence you've got that – he may have had a temper. {The victim} remembered about that stick.
>
> Why would she remember so much about a stick and someone jumping on the hood of a car and not remember about a penis being stuck in her mouth?
>
> Use your common sense, ladies and gentlemen. You must, by law, find Mr. Head not guilty.

(Doc. 10-2 at 105–06, 107, 110 ).

As found by the postconviction court, the record supports a conclusion that Counsel strategically chose not to object to the testimony regarding anal

12

or penile penetration, drug use, pornography, or other uncharged acts because she wanted to argue to the jury that the victim's testimony on these allegations was implausible. And "counsel cannot be adjudged incompetent for performing in a particular way in a case as long as the approach taken might be considered sound trial strategy." Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001); Strickland, 466 U.S. at 690–91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). There is no suggestion that Counsel failed to investigate the relevant law and facts or consider other options when developing her trial strategy. To the contrary, Counsel, an experienced trial attorney,[2] testified at the evidentiary hearing that she was Head's postconviction counsel after his first trial and had successfully gotten his first conviction overturned. (Doc. 10-2 at 500). She testified that she was well aware of the victim's allegations regarding additional sexual activity but "[t]he whole basic tenor of the defense . . . was that [the victim] had a very poor recollection of specific facts involving the actual sexual acts." (Id. at 516). And pointing out the victim's inconsistencies "was one of the cumulative ways that we were going to try to

---

[2] Counsel had been a public defender for more than fifteen years before taking Head's case, and at the time, was trying "at least five or six cases a year." (Doc. 10-2 at 502). See Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) ("Our strong reluctance to second guess strategic decisions is even greater where those decisions were made by experienced criminal defense counsel.").

13

show the jury that she had a very poor memory that was probably supported by someone telling her what to say." (Id.) Given the damaging nature of the victim's testimony involving the charged activity, the defense had no choice but to attempt to show that she was an unreliable witness. And, as noted by the postconviction court, (id. at 630), the more egregious the allegations and the more the lack of physical evidence was highlighted, the more implausible it became that the victim could not remember surrounding details.

Head has not shown that no competent counsel would have failed to object to testimony on the uncharged crimes. See Provenzano, 148 F.3d at 1332 (noting that counsel's conduct is unreasonable only if petitioner shows "that no competent counsel would have made such a choice"). More to the point, the postconviction court's conclusion that "[Counsel's] decision was based on reasonable trial strategy and therefore not deficient" was not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. Thus, under the doubly deferential standard afforded ineffective assistance claims on habeas review, Head is not entitled to federal habeas corpus relief on Ground One.[3]

---

[3] Because the Court finds that the state reasonably determined that Counsel's performance was not deficient, it will not consider whether Head suffered prejudice from the introduction of collateral acts evidence. See Strickland, 466 U.S. at 697 (recognizing that "there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one.").

14

### B. Ground Two

In Ground Two, Head asserts:

> [T]rial attorney was ineffective for eliciting collateral crime/uncharged act evidence that was prejudicial and created the very real possibility that the jury considered these acts as evidence of his propensity to commit sexual crimes against a minor and returned its verdicts as such. The aforesaid testimony and evidence alleged to have been improperly introduced by Petitioner's attorney was substantially similar to the evidence introduced by the prosecutor as detailed in Ground One.

(Doc. 1 at 7).[4] Once again, the postconviction court denied a similar claim after an evidentiary hearing. (Doc. 10-2 at 628–31). The court first found that Head failed to establish Strickland prejudice and then determined that "[Counsel's] trial strategy was to contrast the egregiousness of the victim's allegations with the lack of physical evidence. The more egregious the abuse, the more the lack of physical evidence was highlighted." (Id. at 630). The postconviction court

---

[4] Respondent argues that this claim should be "denied outright" because Head does not specifically identify the evidence that defense counsel elicited that forms the claim's basis. (Doc. 9 at 20). Rule 2(c) of the Rules Governing Habeas Corpus Cases under Section 2254 requires a petitioner to "specify all the grounds for relief available to the petitioner" and to "state the facts supporting each ground." 28 U.S.C. § 2254 Rule 2(c)(1), (2). Therefore "[h]abeas corpus petitions must meet heightened pleading requirements[.]" McFarland v. Scott, 512 U.S. 849, 856 (1994). However, Head states that the improperly introduced evidence was "substantially similar" to that in Ground One. (Doc. 1 at 7). Therefore, it appears that Head now argues that Counsel was constitutionally ineffective for *introducing* collateral acts evidence whereas he argued in Ground One that counsel was ineffective for not objecting to the state's introduction of the evidence. The Court will address this claim to the extent it was raised in state court.

15

found that Counsel's strategy was reasonable under the circumstances of this case. (Id. at 631). The Fifth DCA affirmed.

For the same reasons explained in Ground One supra, the Court finds that competent counsel could have chosen to affirmatively highlight the lack of physical evidence and the victim's inability to remember details of the more egregious uncharged allegations so as to cast doubt on the victim's veracity as it related to the charged crimes. Therefore, the state courts' decision to deny this claim was neither contrary to nor based upon an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts given the evidence presented to the state courts. See 28 U.S.C. § 2254(d). Ground Two is denied.

## V.     CONCLUSION

After carefully reviewing the pleadings and the state-court record, the Court concludes that Head is not entitled to federal habeas corpus relief on any ground raised in this petition.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.     The 28 U.S.C. § 2254 petition filed by David Head is **DENIED** and this case is **DISMISSED with prejudice.**

2.     The Clerk is **DIRECTED** to enter judgment in favor of Respondent and against Head, deny any pending motions as moot, terminate any deadlines, and close this case.

3.     If Head appeals this denial, the Court denies a certificate of appealability.[5] Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** in Jacksonville, Florida on July 5, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

---

[5] A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court or circuit justice or judge must first issue a certificate of appealability (COA). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Slack v. McDaniel, 529 U.S. 473, 484 (2000), or that "the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). Upon consideration of the record, the Court declines to issue a COA. Because Head is not entitled to a COA, he is not entitled to appeal in forma pauperis.

FTMP-2

C: David Head (#709532), counsel of record

18